```
     D139FRUC

 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4              v.                              12 CR 963 (WHP)

 5   DORIAN FRUNGILLO AND JENNIFER
     SALABARIETTA-AGUERO,
 6
                    Defendants.
 7
     ------------------------------x
 8
                                                New York, N.Y.
 9                                              January 3, 2013
                                                10:30 a.m.
10

11   Before:

12                     HON. WILLIAM H. PAULEY III

13                                              District Judge

14
                               APPEARANCES
15
     PREET BHARARA
16        United States Attorney for the
          Southern District of New York
17   ELISHA KOBRE
          Assistant United States Attorney
18
     JOSHUA DRATEL
19        Attorney for Defendant Dorian Frungillo

20   DONALD DUBOULAY standing for PAUL McALLISTER
          Attorney for Defendant Jennifer Salabarietta-Aguero
21

22   ALSO PRESENT:  ALEX WIEDER, Spanish Interpreter

23

24

25
```

1           (In open court; case called)
2           MR. KOBRE:  Good morning, your Honor.  Elisha Kobre
3   for the government.
4           THE COURT:  Good morning, Mr. Kobre.
5           MR. DRATEL:  Good morning.  Joshua Dratel for
6   Mr. Frungillo.
7           THE COURT:  Good morning, Mr. Dratel.  I note the
8   presence of Mr. Frungillo at counsel table.
9           MR. DUBOULAY:  Good morning, your Honor.
10          Donald Duboulay standing in for Paul McAllister for
11  Ms. Salabarietta.
12          First of all, I apologize for being late.
13          Mr. McAllister suffered a head injury and he's
14  currently hospitalized.  He called me from the hospital, his
15  wife.  Right now he's medicated.  He can't speak that well,
16  although he's alert.  She read out the schedule to me.  I'm
17  trying to cover his cases.  But I had something also at 10:00
18  which unfortunately didn't begin at 10:00 so I'm here just for
19  that purpose.  Sorry.
20          THE COURT:  That's all right.  And I'm glad you're
21  here, Mr. Duboulay.
22          I note the presence of Ms. Aguero at counsel table.
23          First off, before we proceed further.  Does either of
24  the defendants need the use of a Spanish interpreter?
25          MR. DRATEL:  Not for Mr. Frungillo, your Honor.

1            MR. DUBOULAY:  Nor for Ms. Salabarietta Aguero, your
2    Honor.
3            THE COURT:  All right.  Then the interpreter is
4    excused.
5            THE INTERPRETER:  Thank you.
6            (Interpreter excused)
7            THE COURT:  Ms. Salabarietta Aguero, do you consent to
8    having Mr. Duboulay stand in for your attorney, Mr. McAllister,
9    today at this initial conference?
10           THE DEFENDANT:  Yes, your Honor.
11           THE COURT:  Very well.
12           Mr. Kobre, for the benefit of the court and the
13   defendants would you describe the charges that the government
14   has lodged against them and what discovery the government has
15   to provide to their counsel.
16           MR. KOBRE:  Yes, your Honor.  The defendants are both
17   charged in a two-count indictment charging both of them with
18   two narcotics conspiracies.  There are two counts.  The first
19   count deals with a period of time from December 2007, at least
20   December 2007 up to and including June 2011.  The second count
21   includes somewhat of a different time period which is from at
22   least April 13, 2009 through June 2011.  And those -- both of
23   those narcotics conspiracies relate to the allegations that the
24   defendants operated an internet pharmacy scheme whereby they
25   dispensed large amounts of schedule III and IV controlled

1   substance without any prescriptions and related conduct.
2         The discovery in the case consists of a fair amount --
3   my understanding is, I haven't seen all of it yet myself -- of
4   e-mails.  A number of e-mail search warrants were executed.  So
5   there are a number of e-mail accounts.  We're in the process of
6   having those converted to an electronic format that can be
7   produced and easily used by the defendants for the discovery.
8         There are also some lab reports, some recordings, some
9   agent reports, and the government would ask for two weeks from
10  today to complete producing discovery.
11        THE COURT:  Any sense as to the volume of these e-mail
12  accounts?
13        MR. KOBRE:  My understanding is that they are fairly
14  large, that there are thousands of e-mails.  Some of those
15  e-mails have attachments.  Some of those attachments are
16  product lists, customer lists, order forms for various
17  controlled substances.  So I think it is somewhat voluminous.
18        THE COURT:  Were there any statements by either
19  defendant in custody?
20        MR. KOBRE:  I am not aware of any.
21        THE COURT:  Obviously if there are any such statements
22  the government should produce them forthwith to the defendant's
23  counsel.
24        Thank you, Mr. Kobre.
25        MR. KOBRE:  Yes, your Honor.

1            THE COURT:  Mr. Dratel and Mr. Duboulay, how much time
2   would you like to review the discovery from the government in
3   order to determine what motions, if any, you wish to make?
4   Because I will -- I'll require the government within two weeks
5   to produce all the discovery to you in a format that you can
6   review.  I'm also going to direct the government to provide a
7   copy of that electronic discovery to MCC or M -- to MDC where I
8   understand both defendants are currently housed.
9            MR. DUBOULAY:  My client is at MCC.
10           THE COURT:  We'll send it to both places.
11           MR. DUBOULAY:  Subject to your Honor's approval, we
12  issued a bail package so my client will be released today.
13           THE COURT:  We'll get to that in a moment.
14       So that at a minimum when the government produces the
15  electronic discovery to defendants the government will also
16  provide a copy to MDC so that Mr. Frungillo will be able to
17  review it.
18           MR. DRATEL:  Thank you, your Honor.
19       I think -- there are two issues beyond just the
20  obvious time it takes to review what Mr. Kobre described in
21  terms of volume.  One is I don't know what the status will be
22  of Mr. McAllister or Mr. Duboulay -- I know both of them and
23  have full confidence in both of them, it's not an issue.  Just
24  a question of whether we're going to wait for Mr. McAllister to
25  return or Mr. Duboulay is going to pick it up.  I don't know

1   what it's going to be with that.

2   THE COURT: I don't think any of us do at this point
3   and obviously we're all concerned for Mr. McAllister.

4   MR. DRATEL: And the defendants, just so the court
5   knows, are husband and wife. So there is a joint concept of
6   defense here beyond the ordinary.

7   THE COURT: You're telling me something, incidentally,
8   that I didn't know until this moment. So I do appreciate that.

9   MR. DRATEL: The other slight conflict is I'll
10  probably be on trial most of February, I start January 28,
11  trial outside the district probably for about three or four
12  weeks. So I can start and have my office do work as well and
13  I'd like to get moving as well because we do have motions to
14  make. In addition to what Mr. Kobre described, the warrants
15  obviously is something we'll have to look at to see whether
16  there are issues. We have other issues with respect to how the
17  defendants got to the United States. Because they were
18  essentially picked up in Panama. They are Costa Rican
19  citizens. Ms. Aguero is a dual United States but Mr. Frungillo
20  is a solely Costa Rican citizen, was in Panama, and basically
21  picked up by Panamanian authorities, turned over to the United
22  States and brought here. So we have some issues obviously with
23  that as well. We do have motions obviously but would like to
24  do them all at once not in piecemeal form. But I'm thinking
25  the end of March would probably be the prudent course simply

1    because of the trial issues I've got.

2             THE COURT:  All right.

3             Mr. Duboulay, do you --

4             MR. DUBOULAY:  I agree with that, Judge.  And I will

5    give your Honor an update.  Right now it's anticipated ten

6    days, two weeks, but I will give your Honor an update.

7             THE COURT:  I think under the circumstances and given

8    the volume of discovery that -- and the uncertainty regarding

9    Mr. McAllister's condition that the proposal by Mr. Dratel is a

10   sensible one.  I'll set the matter down for a conference on

11   Friday, March 22 at twelve noon.  Twelve noon on March 22,

12   2013.

13            What are the defendants' views concerning the

14   exclusion of time between now and March 13?

15            MR. DRATEL:  No objection, your Honor.

16            MR. DUBOULAY:  No objection, your Honor.

17            THE COURT:  Since the continuance is due to the

18   government's need to provide discovery to the defendants, the

19   defendants' need to review that discovery in order to determine

20   what motions, if any, to make and to ensure the continuity of

21   counsel given Mr. McAllister's condition, I prospectively

22   exclude the time from today until March 15, 2013 from speedy

23   trial -- excuse me, March 22, 2013 from Speedy Trial Act

24   calculations.  I find that this continuance serves to ensure

25   the effective assistance of counsel and prevents any

1   miscarriage of justice.

2           Additionally, I find that the ends of justice served
3   by such a continuance outweigh the best interests of the public
4   and both of these defendants in a speedy trial pursuant to 18
5   U.S.C. Section 3161.

6           Mr. Duboulay, I'm going to ask that two weeks from
7   today, that is by January 17, that you provide a letter report
8   to the court on Mr. McAllister's condition or that
9   Mr. McAllister provide such a report with some assessment as to
10  whether Mr. McAllister is going to be able to serve -- to
11  continue to serve on this case.  Because if his recovery is
12  going to be a lengthy one, then I think that he should move
13  forward so that counsel -- so that perhaps you, Mr. Duboulay,
14  can review the documents in detail and prepare any motions with
15  Mr. Dratel.

16          MR. DUBOULAY:  I'll do that.

17          THE COURT:  Very well.

18          Are there any other matters that the parties wish to
19  raise?

20          MR. KOBRE:  Not from the government, your Honor.

21          THE COURT:  Mr. Dratel.

22          MR. DRATEL:  No, your Honor.  Thank you.

23          MR. DUBOULAY:  No, your Honor.  Thank you.

24          THE COURT:  Mr. Duboulay do you wish to raise a bail
25  application?

D139FRUC

1          MR. DUBOULAY:  Actually we've agreed on an
2     application.
3          MR. DRATEL:  Because Mr. Duboulay wasn't at the
4     presentment, Magistrate Judge Netburn, in fact, granted -- set
5     bail for Ms. Aguero.  We consented to detention for the time
6     being.  But she did set bail.  So this is the product of that.
7          THE COURT:  Fine.  Then thank you again, Mr. Dratel.
8          MR. DRATEL:  I understand the discontinuity here.  I'm
9     trying to help.
10         THE COURT:  Thank you.  So I'll let you take all that
11    up.  Then I'll see you in March.  And if anything arises in the
12    meantime, send me a letter; or Mr. Dratel if you determine that
13    there comes an appropriate time to make a bail application,
14    notify me by letter, I'll put it on for a swift hearing and
15    we'll make a determination.
16         MR. DRATEL:  Thank you.
17         THE COURT:  All right.  Thank you for coming in.  Have
18    a good afternoon.
19         (Adjourned)